HDM:BW
F. #2022R00990

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
\* FEBRUARY 21, 2024 \*
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

JASON RODRIGUEZ,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. __24-CR-79__
(T. 18, U.S.C., §§ 981(a)(1)(C), 1349 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

Judge Ann M. Donnelly
Magistrate Judge Vera M. Scanlon

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.   The Defendant and Relevant Individuals and Entities

1.   The defendant JASON RODRIGUEZ was a citizen of the United States and a resident of Bellerose, New York.

2.   Edwin Carrion ("Carrion") was a citizen of the United States and Ecuador and a resident of Cali, Colombia.

3.   Technical Trading Team, LLC ("TTT") was a Florida-registered business founded in or about April 2020 by the defendant JASON RODRIGUEZ and Edwin Carrion.

4.   Trading Platform 1, an entity the identity of which is known to the Grand Jury, was a Chicago-based online forex trading platform, through which individuals could trade in the foreign exchange or "forex" markets.

5. Trading Platform 2, an entity the identity of which is known to the Grand Jury, was a Belize-based online forex trading platform, through which individuals could trade in the forex markets.

6. Victim 1, an individual whose identity is known to the Grand Jury, was a citizen of the United States and a resident of Northport, New York.

7. Victim 2, an individual whose identity is known to the Grand Jury, was a citizen of the United States and a resident of Bellerose, New York.

8. Victim 3, an individual whose identity is known to the Grand Jury, was a citizen of the United States and a resident of Bayville, New York.

9. Victim 4, an individual whose identity is known to the Grand Jury, was a citizen of the United States and a resident of West Babylon, New York.

II. The Fraudulent Scheme

10. In or about April 2020, the defendant JASON RODRIGUEZ and Edwin Carrion founded TTT. RODRIGUEZ was TTT's Chief Operating Officer and Carrion was TTT's Chief Executive Officer. RODRIGUEZ and Carrion promoted TTT as an investment fund specializing in trading in the forex markets. RODRIGUEZ was in charge of trading for TTT, while Carrion provided back-office functions, such as handling contracts between TTT and investors and managing TTT's bank account and disbursements to TTT investors.

11. Beginning in or about April 2020, the defendant JASON RODRIGUEZ and Edwin Carrion began soliciting investments in TTT from friends and family. The investments were fashioned as promissory notes, pursuant to which investors "loaned" TTT money on a one-year term and were to receive annual "interest" payments ranging from approximately 18% or 24%, payable in monthly increments. RODRIGUEZ represented to

prospective investors that their interest payments would be paid out of profits that TTT made from forex trading.

12. The defendant JASON RODRIGUEZ met with prospective investors in person at various locations in Nassau County, New York to discuss the investors' potential investments in TTT. During these meetings, RODRIGUEZ discussed the terms of a potential investment in TTT and provided prospective investors with various assurances that their investment in TTT would be safe and risk-free.

13. The defendant JASON RODRIGUEZ and Edwin Carrion also provided prospective investors, either in person or via email, with a PowerPoint presentation (the "TTT Presentation") discussing TTT. Among other things, the TTT Presentation discussed TTT's trading philosophy and provided prospective investors with various assurances regarding the safety of their potential investment in TTT. On or about November 11, 2021, RODRIGUEZ emailed Victim 3 a more detailed version of the TTT Presentation (the "Second TTT Presentation").

14. Many of the representations made in person by the defendant JASON RODRIGUEZ to prospective TTT investors and memorialized in the TTT Presentation and the Second TTT Presentation were false. These misrepresentations included, but were not limited to, the following:

(a) Loss Reserve Account: RODRIGEUZ told various prospective TTT investors, including, but not limited to, Victims 1-3, before they invested with TTT, that TTT had established a "loss reserve account" of funds that would not be traded and could be used to repay investors in the event that TTT lost money in forex trading. Both the TTT Presentation and the Second TTT Presentation memorialized this misrepresentation, stating that

3

TTT would "[a]lways have a loss reserve account[.]" In fact, TTT did not have a loss reserve account in place prior to when TTT investors invested in TTT, nor did TTT ever create a loss reserve account at a later date.

(b) <u>1% Risk Limit</u>: RODRIGUEZ told various prospective TTT investors, including, but not limited to, Victims 1 and 3, before they invested in TTT, that TTT would only put 1% of TTT investors' funds at risk at any given time. The Second TTT Presentation, which RODRIGUEZ and Edwin Carrion provided to Victim 3 before Victim 3 invested $200,000 with TTT, memorialized this representation, stating that the "secret ingredient to our [TTT's] success" was "[l]imiting the risk by using a 1% loss to 3% gain ratio based on our tested strategy." In fact, on multiple occasions TTT took trading positions that put at risk more than 1% of TTT investors' funds. For example, on or about January 13, 2021, TTT opened a $26,769 position on a trade between the Euro and U.S. Dollar. At this time, TTT's total assets were $922,548.03, meaning that by opening the $26,769 position, TTT put at risk approximately 2.9% of all of TTT's assets.

(c) <u>Intraday Trading Positions</u>: RODRIGUEZ told various prospective TTT investors, including, but not limited to, Victim 1, before Victim 1 invested with TTT, that TTT would not hold trading positions open overnight. The Second TTT Presentation, which was sent to Victim 3 before Victim 3 reinvested with TTT, memorialized this misrepresentation, stating that TTT's "[p]ositions are taken on an intraday timeframe therefore, we don't invest into any one entity for a long period of time." In fact, on multiple occasions TTT kept positions open for many days or weeks at a time. For example, on or about February 16, 2021, TTT entered into a trade between the British Pound and the Japanese Yen. TTT did not close out this trade until April 18, 2022, a period of approximately 14 months. When TTT

did ultimately close out this trade, TTT realized a loss of $151,633.77, which represented approximately 12.61% of all of TTT's assets.

(d) <u>New York City Police Department ("NYPD") Service</u>: Prior to founding TTT, RODRIGUEZ served as an NYPD officer for approximately seven years. During the solicitation process, RODRIGUEZ told various prospective TTT investors, including, but not limited to, Victims 1 and 3, that he had quit the NYPD because he had become so successful at trading. The TTT Presentation similarly represented that RODRIGUEZ's "zealous ambition for trading took precedence resulting in the end of his law enforcement career . . ." RODRIGUEZ failed to disclose that he resigned from the NYPD on or about October 14, 2019, after pleading guilty to a misdemeanor crime and incurring a number of disciplinary infractions.

15. The majority of TTT investors were provided instructions by Edwin Carrion to wire their investment funds to a Bank of America bank account registered to TTT (the "TTT Bank of America Account"). In or about and between April 2020 and June 2022, the TTT Bank of America Account received over $4.4 million in investor funds. The bulk of those funds were transferred to Trading Platform 1 and Trading Platform 2 and the defendant JASON RODRIGUEZ, on behalf of TTT, used a portion of those funds to conduct forex trading. In 2020, RODRIGUEZ lost over $20,000 trading on Trading Platform 2. In 2021, RODRIGUEZ lost over $160,000 trading on Trading Platform 1 and nearly $1.84 million trading on Trading Platform 2. In 2022, RODRIGUEZ lost over $890,000 trading on Trading Platform 1 and approximately $337,000 trading on Trading Platform 2.

16. Though the majority of TTT investors were instructed to wire their investment funds to the TTT Bank of America Account, the defendant JASON RODRIGUEZ instructed certain investors to wire their investment funds directly into RODRIGUEZ's personal

J.P. Morgan Chase bank account (the "RODRIGUEZ JPMC Account"). For example, on or about March 5, 2021, Victim 4, at RODRIGUEZ's instruction and pursuant to a contract with TTT, transferred $100,000 to the RODRIGUEZ JPMC Account. Between in or about August 2020 and September 2022, RODRIGUEZ received over $450,000 from various individuals directly into the RODRIGUEZ JPMC Account. RODRIGUEZ made no attempt to invest these funds, instead using the money to make purported "interest" payments and to pay for various personal expenses, including luxury car rentals and travel.

   17. In or about and between May 2020 and November 2022, TTT investors received monthly "interest" payments from TTT. However, those interest payments were not sourced from profits TTT had made through its trading activity. Rather, the "interest" payments were sourced from TTT investors' principals that they had transferred to TTT for investment purposes.

   18. In or about and between October 2022 and February 2023, the defendant JASON RODRIGUEZ and Edwin Carrion informed TTT's investors that TTT was defaulting on their interest payments. Beginning in or about October 2022, TTT ceased making interest payments and providing principal redemptions to the vast majority of TTT investors. To date, of the approximately $4.8 million sent to the TTT Bank of America Account and the RODRIGUEZ JPMC Account between April 2020 and September 2022, approximately $3.5 million has never been paid back to the investors.

## WIRE FRAUD CONSPIRACY

   19. The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

20. In or about and between January 2020 and September 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JASON RODRIGUEZ, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud investors and potential investors in TTT and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION

21. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

22. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

      (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

  (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

*By Carolyn Pokorny, Assistant U.S. Attorney*
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK