

|  | U.S. Department of Justice |
|---|---|
|  | *United States Attorney*<br>*Eastern District of New York* |
| JPL:BW<br>F. #2022R00990 | *271 Cadman Plaza East*<br>*Brooklyn, New York 11201* |

July 31, 2025

By ECF

The Honorable Ramon E. Reyes, Jr.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Jason Rodriguez
                  Criminal Docket No. 24-79 (RER)

Dear Judge Reyes:

        The government respectfully submits this letter in advance of the sentencing of defendant Jason Rodriguez ("the defendant" or "Rodriguez"), which is scheduled for August 12, 2025 at 11:00 a.m. For the reasons set forth below, the government respectfully submits that a term of imprisonment within the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 78 to 97 months' incarceration is appropriate in this case. This range balances the seriousness of the defendant's crime and the need for both specific and general deterrence of like behavior. The government also respectfully requests that the Court, pursuant to 18 U.S.C. §§ 3663A and 3664, impose an Order of Restitution to the victims of the defendant's crime in the amount of $2,305,256.00, as set forth in the proposed Order of Restitution filed concurrently herewith. Further, the government requests that the Court enter a Final Order of Forfeiture, pursuant to 21 U.S.C. §§ 853(a) and (p), in the amount of $4,770,645.72.

    I.    <u>Background</u>

        The defendant and his co-conspirator Edwin Carrion ("Carrion") founded Technical Trading Team, LLC ("TTT") in 2020. <u>See</u> June 16, 2025 Presentence Investigation Report ("PSR") ¶ 7. Prior to founding TTT, Rodriguez served as a New York City Police Department ("NYPD") officer from 2012 until October 2019. At the time of his resignation, Rodriguez had pleaded guilty to a misdemeanor offense of operating a motor vehicle with a blood alcohol content exceeding .08% and incurred a number of other disciplinary infractions. <u>See</u> <u>id.</u> ¶¶ 21, 59, 89.

Despite having no formal investment experience, Rodriguez served as TTT's Chief Operating Officer and he and Carrion promoted TTT as an investment fund specializing in trading in the foreign exchange ("forex") markets. Id. ¶ 14. TTT was Rodriguez's brainchild, and Rodriguez created TTT's business plan and had complete and sole trading authority over the majority of the funds invested with TTT. Id. Beginning in the spring of 2020, Rodriguez led TTT's efforts to recruit investors and the vast majority of TTT's investors were recruited by Rodriguez. Id. Together, Rodriguez and Carrion recruited at least 22 investors, who invested nearly $5 million with TTT and, to date, have lost approximately $2.3 million.

Rodriguez and Carrion promised investors annual investment returns ranging from 18% to 24% and convinced investors to invest based on a number of material misrepresentations. Id. ¶ 15. At a high level, Rodriguez and Carrion promised investors that they were making a safe investment; in reality, Rodriguez disregarded numerous safeguards that he promised investors were in place to protect their investments. See id. ¶¶ 18-20. For example, though Rodriguez promised investors that TTT had a "loss reserve account" comprised of funds that would not be traded and could be used to repay investors in the event of market losses, no such "loss reserve account" ever existed. Id. ¶ 18. Rodriguez also promised investors that TTT would never expose more than 1% of TTT investors' funds to market risk at any given time, only to ignore that safeguard as well. Id. ¶ 19. And Rodriguez also promised investors that TTT would not hold trading positions open overnight, which Rodriguez ignored on multiple occasions, including once holding a trade open from February 2021 until April 2022, resulting in a catastrophic loss of over $150,000, representing approximately 12.61% of TTT's assets. Id. ¶ 20.

Though Rodriguez did attempt to invest some portion of TTT investors' funds—albeit in flagrant contravention of the safeguards Rodriguez promised investors were in place—Rodriguez also outright misappropriated supposed investment funds to pay other investors their supposed investment returns and keep TTT, which had functionally become a Ponzi scheme, afloat. See id. ¶¶ 22-24. In total, at least 22 investors invested $4,770,645.72 with TTT on the basis of material misrepresentations regarding how their money would be invested. To date, those investors are still owed $2,305,256.00.

On February 21, 2024, Rodriguez was charged by indictment with conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349. On November 20, 2024, Rodriguez pleaded guilty to the sole count of the indictment.

II.  Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

    (2) the need for the sentence imposed--

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct; [and]

        (C) to protect the public from further crimes of the defendant.

18 U.S.C. § 3553(a).

    Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation. See 18 U.S.C. § 3553(a)(2)(D). Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence. The district court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

### III. The Guidelines Calculation

    The government calculated the Guidelines as set forth below:

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. §§ 2X1.1(a), 2B1.1(a)(1)) | | 7 |
| Plus: | Loss exceeds $3,500,000 (U.S.S.G. § 2B1.1(b)(1)(J)) | +18 |
| Plus: | Substantial financial hardship to 5 or more victims (U.S.S.G. § 2B1.1(b)(2)(B)) | +4 |
| Plus: | Abuse of position of trust (U.S.S.G. § 3B1.3) | +2 |
| Less: | Acceptance of Responsibility (U.S.S.G. § 3E1.1) | -3 |
| Total: | | __28__ |

    The defendant is in criminal history category I. See PSR ¶ 60. Offense level 28 and criminal history category I yield a Guidelines sentencing range of 78 to 97 months' imprisonment.

### IV. A Sentence Between 78 to 97 Months' Imprisonment is Appropriate

    The government respectfully submits that a sentence within the Guidelines range of 78 to 97 months' incarceration is sufficient, but not greater than necessary to achieve the goals of sentencing. Such a sentence would adequately take into consideration the relevant Section 3553(a) factors, in particular the nature and seriousness of the defendant's fraudulent scheme, the

need to promote respect for the law, and the need to specifically deter the defendant and generally deter the public from engaging in similar financial frauds in the future.

      A.      <u>Analysis</u>

A Guidelines sentence of incarceration is appropriate, but not greater than necessary, to reflect the seriousness of Rodriguez's offense. Rodriguez was one of TTT's founders and was largely responsible for developing the concept behind TTT. Rodriguez recruited the vast majority of TTT's investor victims—all of whom were individual, retail investors—and had sole trading authority over a majority of all the victim funds that were invested with TTT. Rodriguez was largely responsible for developing and deploying the misrepresentations that convinced investors to trust him and invest in TTT and was largely responsible for squandering the victims' funds by engaging in trading practices that disregarded all of the guardrails that Rodriguez claimed were in place to protect the investors' money and lure them into investing. Worse yet, a majority of the individuals who Rodriguez recruited were close friends of his—including his girlfriend of many years. Simply put, Rodriguez abused the trust of those closest to him. The victim impact statements included in the PSR highlight the seriousness of the offense and the ramifications the defendant's fraud has had on the victims' lives. A substantial incarceratory sentence is warranted to account for the seriousness of the instant offense.

As to deterrence, it is critical that there are strong counterincentives to engaging in white collar crime like that committed by the defendant and his co-conspirators. <u>See</u> <u>United States v. Blech</u>, 550 F. App'x 70, 71 (2d Cir. 2014) (summary order) ("Blech was sentenced based on the 18 U.S.C. § 3553(a) factors, including the need for specific deterrence for a recidivist, and the need for general deterrence for those who might otherwise feel that some white-collar crimes are 'game[s] worth playing.'") (quoting <u>United States v. Goffer</u>, 721 F.3d 113, 132 (2d Cir. 2013)); S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259 ("The second purpose of sentencing is to deter others from committing the offense. This is particularly important in the area of white collar crime. Major white collar criminals often are sentenced to small fines and little or no imprisonment. Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business.")). The government's recommended sentence will send a strong deterrent message to those who, like the defendant, must choose between honest disclosure of financial underperformance or lying to investors.

Furthermore, given that sophisticated fraud schemes are incredibly difficult to detect and prosecute, there is greater need for general deterrence. <u>See, e.g.</u>, <u>Harmelin v. Michigan</u>, 501 U.S. 957, 988 (1991) (noting that "since deterrent effect depends not only upon the amount of the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties"). Because "economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." <u>See</u>, <u>e.g.</u>, <u>United States v. Martin</u>, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White-Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005)) (internal quotation marks omitted); <u>United States v. Heffernan</u>, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect

and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); Drago Francesco, Roberto Galbiati & Pietro Vertova, The Deterrent Effects of Prison: Evidence From a Natural Experiment, 117 J. of Political Econ. 257, 278 (2009) ("Our findings provide credible evidence that a one-month increase in expected punishment lowers the probability of committing a crime. This corroborates the theory of general deterrence.").

For these reasons, the government respectfully submits that the Court should impose a Guidelines sentence between 78 to 97 months' imprisonment.

B.  Restitution Is Mandatory and Appropriate

Under 18 U.S.C. § 3663A, the Court shall impose restitution. In United States v. Zangari, 677 F.3d 86, 93 (2d Cir. 2012), the Second Circuit held that restitution must be measured according to the victim's actual loss, not the defendant's gain. Moreover, in calculating restitution, "these losses need not be mathematically precise," and "[a] reasonable approximation will suffice, especially in cases in which an exact dollar amount is inherently incalculable." United States v. Rivernider, 828 F.3d 91, 115 (2d Cir. 2016) (internal quotation marks omitted). The government respectfully requests that the Court enter the proposed Order of Restitution in the amount of $2,305,256.00.

IV.  Conclusion

For the reasons set forth above, the government respectfully submits that a sentence within the Guidelines range of imprisonment 78 to 97 months' imprisonment is appropriate. The Court should also impose forfeiture of $4,770,645.72 and order that Rodriguez be jointly and severely liable for restitution in the proposed Order of Restitution.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: *Benjamin Weintraub*
Benjamin Weintraub
Assistant U.S. Attorney
(718) 254-6519

cc:   Clerk of the Court (RER) (by ECF)
      Benjamin Yaster, Esq. (by ECF)
      U.S. Probation Officer Nicole Gervase (by Email)